UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TEDJE MENARD,<br><br>        Defendant | Criminal No.    22cr10023<br><br>Violations:<br><br><u>Counts One – Two</u>: Wire Fraud, Aiding and Abetting<br>(18 U.S.C. §§ 1343 and 2)<br><br><u>Count Three</u>: False Representation of Social Security Number, Aiding and Abetting<br>(42 U.S.C. § 408(a)(7)(B), 18 U.S.C. § 2)<br><br><u>Count Four</u>: Aggravated Identity Theft<br>(18 U.S.C. §§ 1028A(a)(1) and 2)<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

<u>INDICTMENT</u>

At all times relevant to this Indictment:

<u>General Allegations</u>

1.      Defendant TEDJE MENARD ("MENARD") resided in the Commonwealth of Massachusetts.

2.      Victim 1 was a real person who resided outside of the Commonwealth of Massachusetts.

3.      A particular residential housing unit ("the Rental Property") was located within a residential apartment building in East Boston, Massachusetts.

<u>The Fraudulent Rental</u>

4.      In or around November 2020, without the knowledge or approval of Victim 1, MENARD, himself, or through an entity he directed, submitted an application to rent the Rental Property using the name and identity of Victim 1.

5.      As part of the application and screening process, MENARD falsely claimed to be Victim 1, providing the company overseeing the Rental Property with, among other things, a copy of a purported North Carolina driver's license containing Victim 1's information but depicting a photograph of MENARD, along with an application listing, among other things, Victim 1's name, social security number, and date of birth.

6.      MENARD used the identity of Victim 1 to rent and reside in the Rental Property from approximately December 2020 through approximately March 2021.

<u>CARES Act Fraud</u>

7.      The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.  As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

*A. The Economic Injury Disaster Loan Program*

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering the economic effects of the COVID-19 pandemic.  Among other things, the CARES Act expanded the

SBA's Economic Injury Disaster Loan ("EIDL") program to provide loans of up to $2 million to small businesses that suffered "substantial economic injury" from COVID-19.

9.      EIDL funds were issued directly from the United States Treasury.  Applicants applied through the SBA via an online portal.  If approved, the funds were disbursed from government-controlled accounts maintained with the U.S. Treasury.

10.      The EIDL application process required that an authorized business representative provide information concerning the affected business, including the number of employees, gross revenues, and costs of goods sold in the 12 months prior to January 31, 2020, as well as information about the business owner.  Applicants electronically certified that the information provided was accurate.

11.      The SBA relied on the information provided by the applicant to determine how much money the small business was eligible to receive in the form of EIDL funds and relied upon the accuracy of information provided by the applicant to determine such issues as eligibility for the loan.

*B.  The Paycheck Protection Program*

12.      Another source of relief provided under the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP").  The PPP offered forgivable loans of up to $20,833 to small businesses and independent contractors affected by the COVID-19 pandemic.  The loan proceeds could be used for payroll and certain other business expenses.

13.      SBA required a qualifying business or independent contractor business seeking a PPP loan to submit a PPP loan application, and for an authorized representative of the business to

3

sign the application.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  A participating lender then processed the PPP loan application.

14.     If the participating lender approved the PPP loan application, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA.  The participating lender then transmitted data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, to the SBA in the course of processing the loan.

<u>The Scheme to Defraud</u>

15.     Beginning at least as early as April 2021 through in or around June 2021, MENARD devised a scheme to fraudulently obtain pandemic-related relief funds from both the PPP and EIDL programs.

*A. MENARD's PPP Loan Application*

16.     On or about April 30, 2021, MENARD, himself, or through an entity he directed, submitted a PPP loan application, via wire communication in interstate commerce, in his own name that requested a PPP loan in the amount of approximately $20,833.

17.     MENARD falsely represented that his business's total gross income in 2019 was $100,000 on the PPP loan application.  MENARD also submitted a fraudulent Schedule C Form 1040 tax document for 2019 listing $100,000 in gross income relating to the provision of food services.

18.     Additionally, MENARD made false statements in response to questions about his criminal history.   Specifically, Question 6 of the PPP loan application asked whether the applicant (MENARD), within the last 5 years, had been convicted, pleaded guilty, pleaded nolo contendere, or commenced any form of parole or probation (including probation before judgment), for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal assistance.  MENARD digitally selected "NO" in response to this question and digitally initialed the question.

19.     In or around 2020, MENARD pled guilty to Identity Fraud (more than $7,500 but less than $150,000) in connection with a loan application, in violation of Ohio Revised Code § 2913.49(B)(2), in Montgomery County, Ohio.

   *B.  EIDL Loan Application in the Name of Victim 1*

20.     On or about June 18, 2021, MENARD, himself, or through an entity he directed, submitted an EIDL application, via wire communication in interstate commerce, using the name and Personal Identifying Information ("PII") of Victim 1 requesting an EIDL loan in the amount of $40,000.

21.     In the application, MENARD included information regarding a false and fictitious business in Victim 1's name.

22.     Victim 1 did not provide MENARD with authority to create a business in his name or to use his name or PII to submit an application for an EIDL loan.

<u>COUNTS ONE AND TWO</u>
Wire Fraud, and Aiding and Abetting
(18 U.S.C. §§ 1343, 2)

The Grand Jury charges:

23.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 22 of this Indictment.

24.     On or about the dates below, in the District of Massachusetts, and elsewhere, the defendant,

TEDJE MENARD,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 1 | April 30, 2021 | Submitted a fraudulent PPP application in MENARD's name by means of an interstate wire |
| 2 | June 18, 2021 | Submitted a fraudulent EIDL application in the name of Victim 1 by means of an interstate wire |

All in violation of Title 18, United State Code, Sections 1343 and 2.

## COUNT THREE
False Representation of Social
Security Number
(42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2)

The Grand Jury further charges:

25.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 15 and 20 to 22 of this Indictment.

26.     On or about November 19, 2020, in the District of Massachusetts, the defendant,

TEDJE MENARD,

for the purpose of obtaining something of value from a person, and for any other purpose, did, with intent to deceive, falsely represent a number to be the social security account number assigned by the Commissioner of Social Security to him on an application to rent an apartment, when in fact such number is not the Social Security account number assigned by the Commissioner of Social Security to him.

All in violation of Title 42, United States Code, Section 408(a)(7)(B) and Title 18, United States Code, Section 2.

7

<u>COUNT FOUR</u>
Aggravated Identity Theft; Aiding and Abetting
(18 U.S.C. §§ 1028A(a)(1) and 2)

The Grand Jury further charges:

27.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 15 and 20 to 22 of this Indictment.

28.     On or about November 19, 2020, in the District of Massachusetts and elsewhere, the defendant,

TEDJE MENARD,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, False Representation of Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B), as charged in Count Three.

All in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

29.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1343, and 1349 set forth in Counts One and Two, the defendant,

TEDJE MENARD,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

30.     If any of the property described in Paragraph 29, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 29 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

9

A TRUE BILL

_Alicia Piccolmini_
FOREPERSON

_J. Mackenzie Duane_
J. MACKENZIE DUANE
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts:  January 27, 2022
Returned into the District Court by the Grand Jurors and filed.

_Dawn M. King_  1/27/22 11:37am
DEPUTY CLERK

10